AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Indiana

**SEALED**

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 1:18-mj-00174 |
| JOSEPH FREEMAN, | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **September 2015-February 2018** in the county of **Marion** in the **Southern** District of **Indiana**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Count 1: 18 U.S.C., Section 2251(a) and (e) | Sexual Exploitation of a Minor and Attempted Sexual Exploitation of a Minor. |
| Count 2: 18 U.S.C., Section 2252 | Child Pornography Trafficking. |

This criminal complaint is based on these facts: See attached Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Darin E. Odier, FBI TFO
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 02/26/2018

*Judge's signature*

City and state: Indianapolis, Indiana

Debra McVicker Lynch, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Darin Odier, hereby depose and state as follows:

1. **Affiant**: I am a Detective in the Cybercrime Unit of the Indianapolis Metropolitan Police Department. I am also a cross designated Federal Task Force officer assigned to the FBI the Indianapolis Violent Crimes Against Children Task Force.

2. **Experience**: I have over 28 years of law enforcement experience. I have investigated State and Federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography. I have written numerous search warrants involving internet crimes against children cases and participated in their execution.

3. **Training**: I have attended and presented at the National Crimes Against Children Conference multiple times and attended numerous classes related to investigating the online sexual exploitation of children. I am also a member of the Indiana Internet Crimes Against Children Task Force, which includes numerous federal, state and local law enforcement agencies. I am currently assigned to operate in an undercover capacity on the Internet to identify and investigate persons attempting to exploit or solicit sexual acts with children or trafficking in child pornography. As a Task Force Officer, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

4. **Information provided**: The statements in this affidavit are based on information obtained from my observations and communications, as well as

1

information learned from other law enforcement officers and witnesses. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrant, the affiant has not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for the listed offenses.

5. **Probable Cause for Arrest Warrant:** For the reasons listed below, there is probable cause to believe that on, about or between September 2015-February 2018 Joseph Freeman (Freeman), DOB 08-29-19xx (Known to affiant, but redacted) committed the following offenses in the Southern District of Indiana:

6. **Count 1: Sexual Exploitation of a Minor and Attempted Sexual Exploitation of a Minor (18 U.S.C. § 2251(a) and (e)):** This statute provides that "Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce

2

or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed. It is also a crime to attempt to sexually exploit a child. 18 U.S.C. § 2251(e).

7. **Count 2: Child Pornography Trafficking (18 U.S.C. § 2252):** This investigation also concerns alleged violations of 18 U.S.C. § 2252, which prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or foreign commerce.

## Definitions

8. The following definitions apply to this Affidavit:

9. "Child Pornography" means any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that

3

an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256.

10.  "Minor" means any person under the age of eighteen years. *See* 18 U.S.C. § 2256(1).

11.  "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person. *See* 18 U.S.C. § 2256(2).

12.  "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

### Case Specific Probable Cause

13.  **Freeman's Acts Against Minor Victim 2:** On February 9, 2018 at 11:53 pm, Indianapolis Metropolitan Police Department (IMPD) Officer Bowles was dispatched to xxxx Grove Berry Drive in Indianapolis, in the Southern District of Indiana (address redacted but known to Affiant and hereinafter referred to as "Address 1") on an investigation of inappropriate videos. The officer arrived and spoke with the complainant, Witness 2. Witness 2 told the officer that she had a cell phone which belonged to Joseph Freeman and she saw a video that showed the bedroom of her minor relative, known in this affidavit as Minor Victim 2. The phone, a Samsung Galaxy, belonged to Witness 2's boyfriend, Joseph

4

Freeman, (Freeman) W/M DOB 08/29/**** (Known to this affiant but redacted). Witness 2 stated she was able to save the video.

14. Witness 2 stated that when Freeman saw Witness 2 watching the video, he left the residence without saying anything. Witness 2 stated that she further checked the contents of Freeman's Samsung Galaxy phone.

15. Witness 2 found a video dated February 8, 2018, and the video showed Freeman putting a camera phone in a bag or box with a hole in it to record the bed area of Minor Victim 2. Ms. Witness 2 said the video showed Minor Victim 2 in her bedroom.

16. Witness 2 checked the camera angle from the video and determined where the camera had been positioned when the video was produced. She believed that the video was shot in Minor Victim 2's bedroom, with the camera positioned on a shelf above the television, which is across from Minor Victim 2's bed. On that shelf, Witness 2 found a hole in a Kotex bag which was on the shelf.

17. Witness 2 also told Officer Bowles that that she found another camera video dated February 9, 2018 on Freeman's phone. This video showed a bathroom in the residence that Minor Victim 2 uses to shower. This bathroom is adjacent to Witness 2's bedroom. Witness 2 checked the camera angle from the video and determined where the camera had been positioned when the video was produced. She believed when the video

was shot, the camera was leaned against a pillow angled toward the bathroom from inside the bedroom of Witness 2.

    a. Witness 2 stated that Minor Victim 2 had shown her a text that Freeman sent to Minor Victim 2 on February 8, 2018 at 7:55pm that stated "[Minor Victim 2] you need to take a shower. Your mom is on her way and you dont want her coming up there and yelling b/c your sleeping".

    b. Witness 2 stated that the text was odd and that Witness 2 never told Freeman to tell Minor Victim 2 to take a shower.

18. Minor Victim 2 is a child who, at all times relevant to this investigation, was less than 18 years of age.

19. IMPD Evidence Technician Reynolds responded to the scene and took photographs. Officer Bowles collected the Samsung Galaxy phone and Kotex bag as evidence and took them to the Indianapolis Metropolitan Police Department property room.

20. IMPD Cybercrimes Det. Laura Smith (SMITH) was assigned the investigation. This affiant has worked directly with Det. Smith on multiple child exploitation cases.

21. On February 15, 2018, Det. Smith requested a search warrant to forensically examine the Samsung Galaxy cellular phone which was recovered from Witness 2. The warrant was granted by the Marion County, IN Superior Court.

22. On February 15, 2018, Det. Smith interviewed Witness 2. Witness 2 stated that the Samsung Galaxy phone was actually an old phone that Freeman allowed her young son to use. Witness 2 said that Freeman had his new phone with him when he left. Witness 2 said she saw the videos in the Google photos folder on the Samsung Galaxy. Through my training and experience, I know that Google accounts are synced from device to device and therefore the videos may have actually been recorded using another device but later accessed and saved to the Samsung Galaxy recovered from Witness 1.

23. Witness 2 advised that Freeman was currently in the hospital because of a suicide attempt on February 12, 2018. She believed that Freeman's current cellular phone was still in his car at the impound lot. She also provided Freeman's Google email address of jaf2984@gmail.com.

24. A preservation was also sent to Google for the account jaf2984@gmail.com.

25. In interviews with Witness 2 and Minor Victim 2, Det. Smith learned Minor Victim 2 originally found the videos when she logged in to her Google account while at her grandmother's residence. After seeing the videos, she contacted Witness 2, who was at their residence with Freeman. Minor Victim 2 played the videos for her mom through video chat. When Freeman saw this, he quickly left the residence. It was at this point that Witness 2 looked on Freeman's old phone, and Witness 2 saw the videos stored in Google photos. Witness 2 was not aware that Minor

7

Victim 2 had used that phone (the Samsung Galaxy that was Freeman's old phone) on a prior occasion to log into her Google account.

26. Based on my training and experience, it is my belief that because Minor Victim 2 had logged in to her Google account with the Samsung phone, it automatically synched to the Google account of Minor Victim 2, which then resulted in the storage of the videos of Minor Victim 2 to Minor Victim 2's Google account.

27. Witness 2 gave consent for law enforcement to access the Google account of Minor Victim 2 to see if the videos were synched to her account. Two videos of interest were located and copied from the Google account of Minor Victim 2. They are described as follows:

    a. <u>20180207_140008.mp4</u>: This video was 1 minute and seven seconds in length. The video showed a camera being manipulated inside of a room with purple walls. Inside of the room was a bed with purple sheets. The camera appeared to be shooting through a hole of an unknown package. An adult male's face is directly in front of the camera as its being positioned.

    b. <u>20180208_144155.mp4</u>: This video was 16 minutes and 13 seconds in length. It shows a room with purple walls and purple bed sheets. In the beginning of the video, the camera is being positioned by an adult male whose face is visible directly in front of the camera. The camera appeared to be shooting through a hole of an unknown package. The camera was positioned showing a bed. At

8

the 1 minute, 30 second point in the video, the adult male stepped away and again looked directly into the camera before he appeared to leave the room. At approximately 4 minutes into the video, a person identifiable as Minor Victim 2 entered the room and laid on the bed. The video did not show Minor Victim 2 in a state of nudity or with her vaginal or pubic area exposed. When this video was recorded, Minor Victim 2 was 14 years old.

28. **Defendant Freeman's Immediate Detention:** Det. Smith located an IMPD police report indicating that on February 12, 2018 (3 days after Witness 2 made the police report to Officer Bowles), at approximately 2:30 pm, an officer was dispatched to 8303 Dix Rd to check the welfare of a subject who was sitting in a vehicle on the side of the road.

29. According to the report, upon arrival the Officer observed a silver Chevrolet Impala bearing Indiana Passenger plate #132NB facing northbound in the southbound lane, with half of the vehicle in the ditch and the other half on the roadway. The Officer approached the passenger side window and observed a person identified as Joseph Freeman sitting in the driver seat with the window down.

30. The Officer observed the keys in the ignition to be in the on position and the gear shifter to be in drive, but the vehicle was not running. The Officer walked around to the driver side of the vehicle and made contact with Freeman. He observed Freeman to be very disoriented

9

and confused. Freeman stared into the sky while the Officer attempted to speak with Freeman.

32. Freeman told police that he was 16 years old and had taken multiple pills. The Officer observed an empty bottle of Benadryl (32 count) on the floorboard of the front passenger side. Officer observed Freeman's Will and his wedding ring sitting in the passenger seat of the car. A passerby advised Freeman had been sitting in the vehicle for approximately 4-5 hours on the side of the road.

32. The officer had reason to believe Mr. Freeman was a danger to himself and in need of immediate hospitalization. Freeman was placed under immediate detention and transported to Community South Hospital. Due to Freeman's vehicle being parked in the opposite direction of travel the vehicle was towed to Auto Return by Wards towing.

33. **Smith's Request to Search Vehicle:** After learning about the February 12, 2018 detention of Freeman, Det. Smith confirmed through the IMPD Auto Desk that the vehicle was towed and was being stored at Auto Return in Indianapolis. A hold was place on the vehicle pending further investigation.

34. On February 16, 2018, Det. Smith requested and received a search warrant out of Marion County, Indiana Superior Court for Freeman's vehicle.

10

35. On February 16, 2018, Det. Derek Cress and Det. Smith went to Auto Return and searched Freeman's vehicle. Inside of the vehicle, Det. Smith located an iPhone, which was photographed and collected.

36. **Minor Victim 1:** On February 16, 2018, Det. Smith received a phone call from Witness 1. Witness 1 said she heard about the investigation involving Freeman and wanted to come forward with information.

37. Witness 1 stated that she is the ex-girlfriend of Freeman and they broke up in 2015 when she learned that Freeman had been secretly videotaping her minor relative, Minor Victim 1.

   a. Witness 1 recounted that she was at work in 2015 when Minor Victim 1 sent her a message and asked her to come upstairs to talk to Minor Victim 1 when she got home.

   b. Minor Victim 1 told Witness 1 that she believed that Joseph Freeman had been recording Minor Victim 1. Minor Victim 1 told Witness 1 that she was removing her sheets from her bed and found a cellphone which had been inside a pillow next to her bed. Minor Victim 1 said that she also recalled finding a cellular phone in a plastic cup which had been placed inside the bathroom with a hole cut in the cup.

    c.    Witness 1 said that upon searching Minor Victim 1's bedroom, she found a cellular phone in a teddy bear inside the child's room.

    d.    Witness 1 said that she observed approximately three (3) videos of Minor Victim 1 on the phones which she found. She believed the photos that Witness 1 found were in the phone's gallery.

    e.    Witness 1 said she collected the cellular phones and confronted Freeman about it. Freeman told her that he was only trying to prove that Minor Victim 1 wasn't doing what she was supposed to be doing and lying to Witness 1 about it.

    f.    Witness 1 said that Freeman left the house that evening and went to his brother's residence to stay. The next day when she was gone from the house, she came back and it appeared as though Freeman had been searching through the house. Witness 1 said that Freeman told her that the videos had been deleted from the phone and told Witness 1 that he didn't care if she took the phones and left the residence.

38.    Witness 1 said she moved out of Freeman's house on Grove Berry in a matter of hours and took most of her belongings. She said she took one of the phones, but has since obtained another phone belonging to Freeman.

39. Witness 1 obtained the second phone when she met with Witness 2 after learning of the most recent incident with Witness 2's relative. Witness 2 located the phone in the house and it matched the phone that Witness 1 recalled Freeman as using during the time she stayed there.

40. Both phones in Witness 1's possession were black Motorola cellular phones. Witness 1 could not remember where the 3rd phone went or if she was able to take it from the house when she moved out in 2015.

41. On February 17, 2018, Det. Smith met with Witness 1 to further discuss the 2015 incident. Smith collected the two Motorola cell phones.

   a. Witness 1 told Det. Smith that she had a blue Dell laptop which she had left behind at Freeman's residence in 2015. She also said that Freeman had a Nikon camera in a black bag in his residence. She described the 3rd cell phone that she had found as a gray "sidekick" with green around it.

   b. Witness 1 told Det. Smith that she found cellular phones in strange places all over the house and thought nothing of it, until Minor Victim 1 told Witness 1 about the cell phone that Minor Victim 1 found inside of the pillow, which led to Witness 1 ending the relationship with Freeman in 2015.

13

  c. Witness 1 said that Freeman also has a minor relative who visits him on the weekends and stays at the house.

42. On February 17, 2018, the two black Motorola cell phones were placed into the property room pending forensic examination.

43. **Forensic Examination of Phones (Minor Victim 1):** On February 19, 2018, Det. Smith requested and received search warrants for the two Motorola phones which were recovered from Witness 1. The search warrants were issued in Marion County, Indiana Superior Court.

44. IMPD Cybercrimes Detective Grant Melton conducted a forensic examination of Motorola model MB855 cell phone which had been received from Witness 2. In the internal memory of the phone, the following files were found:

  a. <u>2015-09-03_20-33-06_647.mp4:</u> This video is a 23:30 minute video in which the camera was manipulated and moved for approximately the first 3 minutes of the video. The view was of a bedroom (Bedroom A) and showed a bed, dresser, and a television. An adult male was visible from the shoulders down and was seen walking away from the camera. Approximately 14 minutes later, Minor Victim 1 was visible wearing a towel. As she dressed, her vaginal and pubic area were exposed and clearly visible. When this video was recorded, Minor Victim 1 was 11 years old.

  b. <u>2015-09-15_20-22-25_327.mp4</u>: This video is a 14:20 minute video in which the camera was manipulated and moved in a bathroom for approximately 90 seconds, after which it was in a fixed position. An adult male's face was clearly visible directly in front of the camera as it was positioned. Soon after the male left the bathroom, Minor Victim 1 entered the bathroom wearing a towel. For several minutes, Minor Victim 1 was nude with her vaginal and pubic area exposed and visible. When this video was recorded, Minor Victim 1 was 11 years old.

  c. <u>2015-12-29_12-08-29_809.mp4</u>: This video is an 18:30 minute video in which the camera was being manipulated and moved in Bedroom A. At approximately 1 minute, an adult male's face was visible directly in front of the camera. The adult male left, and Minor Victim 1 entered approximately 2 minutes later wearing a towel. As she dressed, her vaginal and pubic area were exposed and visible. When this video was recorded, Minor Victim 1 was 12 years old.

  d. <u>2015-12-31_12-40-42_147.mp4</u>. This video is a 23-minute video in which the camera was manipulated and moved in Bedroom A. An adult male without a shirt was clearly visible directly in front of the camera as it was being positioned. As the camera was being positioned, Minor Victim 1's name could be seen on the

bedroom door. After the adult male left the room, Minor Victim 1 entered wearing a towel. As she dressed, her vaginal and pubic area were exposed and visible. When this video was recorded, Minor Victim 1 was 12 years old.

45. Although the videos are similar in content, they are 4 unique videos that, based on the naming convention of each video, were recorded between September 2015 and December 2015.

46. This affiant has reviewed a BMV photo of Freeman and I believe that Freeman is the adult male whose face is visible in 5 of the videos described above.

47. In 2015-09-03_20-33-06_647.mp4, described above, the face of the adult male is not visible. However, a watch worn on his right arm and his build are consistent with the adult male seen in the other videos.

48. On February 17, 2018, Det. Smith requested a search warrant for Address 1 to search for, seize, and examine digital devices. The search warrant was issued in Marion County, Indiana Superior Court.

49. On February 17, 2018 Det. Smith and assisting detectives served the search warrant at Address 1. Witness 2 was present as she was moving her items from the residence at Address 1.

      a.    Witness 2 had collected several digital devices that did not belong to her, which she found inside of Address 1, and Witness 2 had placed them on a chair inside the living room area.

      b.    Witness 2 stated that she found three (3) cellular phones inside of a laundry basket in their bedroom. They were identified as a black Nokia, a White Samsung Galaxy, and a Samsung with a gray and pink case.

          1.    One of the phones, identified as a black Nokia, was taken by her neighbor who tried to examine it.

          2.    Witness 2 received the phone back from the neighbor while officers were still on-scene.

      c.    Other items located inside of Address 1 included a Nikon Camera, a 35 mm party camera, a Samsung digital camera, a Dell laptop, and 2 loose Sim cards.

      d.    All the items were photographed, collected, and placed into the Marion County Property Room pending examination. These examinations have not been completed.

50.    This affiant has investigated multiple cases of the sexual exploitation of attempted sexual exploitation of children involving the use of hidden camera or recording devices. I have learned through experience that these investigations often share the same characteristics and/or

tradecraft among the perpetrators. These include, but are not limited to the characteristics:

    a.    Manipulating or positioning the camera in a covert location.

    b.    The face or body of the perpetrator is visible as the perpetrator positions the camera and/or when the perpetrator retrieves the camera after the recording is complete.

    c.    The fixed field of view is usually in a bathroom or bedroom and focuses on an area likely to show the victim in a state of nudity such as in front of a toilet, a mirror, a dresser and/or a bed.

51. The videos in the present investigation are consistent with these characteristics and/or tradecraft.

52. The devices used to record and store the videos in question were not manufactured in Indiana and therefore travelled in interstate or foreign commerce.

53. Each of the videos which depicted Minor Victim 1 and Minor Victim 2 were recorded in a location within the Southern District of Indiana. Each of the devices which were found to contain the videos in question were located in the Southern District of Indiana.

## **CONCLUSION**

54.     Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that **Joseph Freeman** has committed the above listed offenses.

_____
Darin Odier
Task Force Officer
Federal Bureau of Investigation


Subscribed and sworn before me this 26th day of February, 2018.

_____
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana